IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ART ASK AGENCY,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No. 24-cv-5554<br><br>Judge Georgia N. Alexakis<br><br>Magistrate Judge Young B. Kim |

**PLAINTIFF'S RENEWED MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DEFENDANTS IDENTIFIED IN SCHEDULE A**

Plaintiff ART ASK AGENCY submits the following renewed memorandum in support of its Renewed Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendants listed in Schedule A (collectively, the "Defaulting Defendants").

The Defaulting Defendants, as set forth in the Complaint, have been charged with copyright infringement and violation of the Illinois Uniform Deceptive Trade Practices Act.

ART ASK AGENCY takes pride in its products which are emblematic of ART ASK AGENCY's inspiration and mission to provide high quality products. Anne Stokes is a British artist who creates fantasy art that covers a broad range of themes including romantic and enchanted forests to the dark underworld of gothic vampires. (*See* www.annestokes.com/events/) Anne Stokes is a prolific artist who started her career designing merchandise and tour products for bands like Queen and the Rolling Stones. *Id.* She is also a sculptor and has also designed jewelry and t-shirts worn by Mike in Tim Burton's 'Charlie and the Chocolate Factory'. *Id.* She has also created

the concept art and illustrations for Dungeons and Dragons. *Id.* As Anne's art career progressed, she moved into licensing her own creations and expanding the rangers of her fantasy-themed paintings which can be found worldwide on t-shirts, posters, book covers, calendars, jigsaws, tarot cards, sculptors, mugs, jewelry and greeting cards, among others. *Id.* Since the initial launch of its original ANNE STOKES brand products, the ANNE STOKES copyrights are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote its ANNE STOKES copyrighted artwork to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the ANNE STOKES website and social media sites, and point of sale materials. [Complaint, Dkt. No. 1 at ¶ 8]. Long before Defendants' acts described herein, Plaintiff launched the ANNE STOKES products. Plaintiff ART ASK AGENCY is the exclusive licensee of the ANNE STOKES copyright registrations for the fantasy art of British artist Anne Stokes. [Complaint, Dkt. No. 1 at ¶ 7].

On information and belief, Defaulting Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing infringing versions of the ANNE STOKES Copyrights (the "Counterfeit/Infringing Products") in the same transaction, occurrence, or series of transactions or occurrences. [Complaint, Dkt. No. 1 at ¶¶ 4, 17]. Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under the Online Marketplace Accounts (collectively, the "Defendant Internet Stores") identified in Amended Schedule A. *Id.* Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit ANNE

2

STOKES Products to consumers within the United States, including the State of Illinois. *Id*. Additional factual assertions applicable to Defaulting Defendants are found in Paragraphs 12-21 of the Complaint and are incorporated herein. *Id*. at ¶¶ 12-21.

Plaintiff filed this action on July 2, 2024, alleging, among other claims, copyright infringement and seeks statutory damages and injunctive relief. [Dkt. No. 1]. Also on March 26, 2024, Plaintiff filed a Motion for Entry of a Temporary Restraining Order and supporting Memorandum. [Dkt. Nos. 10, 11]. On July 3, 2024, this Court granted Plaintiff' *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") [Dkt. Nos. 24, 25].

Paragraph 9 of the TRO permitted Plaintiff to complete service of process to Defendants by electronically publishing a link to the Complaint, the TRO and other relevant documents on a website and/or by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Declaration of Maria Strid to the complaint and any e-mail addresses provided for Defendants by third parties that includes a link to said website. On July 26, 2024, Plaintiff properly effectuated service on the Defendants via email to the associated email addresses listed in the column beside Defendants' store name as set forth in Exhibit A. The email addresses associated with the Defendants were provided to Plaintiff by the e-commerce platform providers AliExpress, Alipay and Printerval that hosted Defendants' internet stores. *See* Exhibit B, ¶ 6 – Declaration of William Kalbac, ¶ 4. The service email sent to Defendants included a link to the Summons, Complaint, TRO, Motion for Entry of a Preliminary Injunction and supporting Memorandum as well as including a link within the body of the email to an outside website that hosted the above-referenced documents. *Id.* at ¶ 7. None of the Defaulting Defendants have entered an appearance or otherwise defended this action. *See* Declaration of Michael A. Hierl (the "Hierl Declaration") at ¶ 2.

Plaintiff filed a Motion for Entry of Default and Default Judgment against the defendants identified in Schedule A on August 27, 2024 [Dkt. Nos. 37, 38] which was denied without prejudice on September 3, 2024. [Dkt. No. 42]. Plaintiff filed an Amended Motion for Entry of Default and Default Judgment against the defendants identified in Schedule A on September 3, 2024 [Dkt. Nos. 45, 46] which was denied without prejudice on October 8, 2024. [Dkt. No. 50].

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on Counts I and II of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiff further seeks an award of statutory damages as authorized by 17 U.S.C. § 504(c) for willful copyright infringement against each of the Defaulting Defendants for infringing the ANNE STOKES Copyrights in connection with products sold through each of the Defendant Internet Stores. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products and that all assets in Defaulting Defendants' financial accounts operated by AliExpress, Alipay and Printerval as well as any newly discovered assets, be transferred to Plaintiff.

## ARGUMENT

**I.     JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. *See* [Complaint, Dkt. No. 1, at ¶ 5] *uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for

personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial Internet websites and online marketplace accounts operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating websites and/or online marketplace accounts that offer shipping to the United States, including Illinois and, on information and belief, has sold Infringing Products to residents within the United States, including Illinois. Many of the websites look sophisticated and accept payment in U.S. Dollars via credit cards and AliExpress, Alipay and Printerval. [Dkt. No. 1 at ¶ 13]. As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce and has wrongfully caused Plaintiff substantial injury in the State of Illinois. *See Estee Lauder Cosmetics Ltd. & Make-up Art Cosmetics Inc. v. Ali-Beauties Store Store, et al.,* No. 1:19-cv-04579 (N.D. Ill. Sept. 12, 2019) (unpublished) [Dkt. No. 49]; *Bose Corp. v. Amilineinc, et al.,* No. 1:19-cv-05347 (N.D. Ill. Oct. 9, 2019) (unpublished) [Dkt. No. 44].

## II. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On July 2, 2024, Plaintiff filed its Complaint alleging, among other claims, Copyright infringement (Count I) and violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et. seq. (Count II). The Defendants were properly served on July 26, 2024. [Dkt. No. 31]. The remaining Defendants, despite having been served with process, have ignored these proceedings and failed to plead or otherwise defend this action. Hierl Declaration at ¶ 2.

5

Accordingly, Plaintiff asks for entry of default and default judgment against the Defaulting Defendants.

### III. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

More than twenty-one (21) days have passed since Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants identified in Schedule A. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Plaintiff requests an award of statutory damages as authorized by 17 U.S.C. § 504(c) for willful copyright infringement against each of the Defaulting Defendants for use of infringing imitations of Plaintiff's Copyrights in connection with products sold through the Defendant Internet Stores. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products and that all assets in Defaulting Defendants' financial accounts operated AliExpress, Alipay and Printerval, and any newly identified accounts that are associated with the Defendants' accounts be transferred to Plaintiff.

A. **Copyright Infringement**

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization …, or any other form in which a work may be recast, transformed or adapted." 17 U.S.C. § 101. Lastly, "when cartoons or movies are copyrighted, a component of that copyright protection extends to the characters themselves, to the extent that such characters are sufficiently distinctive. *Warner Bros. Entm't Inc. v. X One X Prods.,* 644 F.3d 584, 597 (8th Cir. 2011).

Here, Plaintiff is the exclusive licensee of the copyright of ANNE STOKES products. The accused products are derived from the distinctive creative content found in ANNE STOKES products. As such, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of this claim.

B. **Violation of the Illinois Uniform Deceptive Trade Practices Act**

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. The Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* (citation omitted). As such, the determination as to whether there is a likelihood of confusion under the Illinois Uniform Deceptive Trade Practices Act is similar to the Lanham Act analysis. *Am. Broad. Co. v. Maljack Prods., Inc.,* 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

Plaintiff alleged in its Complaint that Defaulting Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their products as genuine ANNE STOKES products, causing likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to affiliation, connection, or association with Plaintiff's genuine products, representing that their counterfeit products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. [Dkt. No. 1, ¶¶ 33-36]. Plaintiff, therefore, requests entry of judgment with respect to Count II of its Complaint for willful violation of the Illinois Uniform Deceptive Trade Practices Act against Defaulting Defendants.

## IV. PLAINTIFF IS ENTITLED TO MONETARY DAMAGES AND INJUNCTIVE RELIEF

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations.

Plaintiff advertises throughout the world and spends considerable resources marketing and protecting its copyrights and associated products. Plaintiff's promotional efforts include website and social media sites. [Dkt. No. 1 at ¶ 8].

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the infringement

8

is found to be willful, 17 U.S.C. § 504(c)(2) provides that "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

In the present case, all of the Defendants are considered willful infringers of the ANNE STOKES Copyrights, and in particular U.S. Copyright Registration Nos. VA 2-152-055 (Gothic Prayer); VA 2-152-065 (Summon the Reaper); VA 2-271-518 (Woodland Guardian); VA 2-271-652 (Gothic Guardian); VA 2-272-041 (Pirate Skull); VA 2-272-210 (Skull Embrace); VA 2-272-273 (Final Verdict); VA 2-272-364 (Rock God); VA 2-328-695 (Soul Bond) and VA 2-329-205 (Celtic Dragon 1) (collectively, the "ANNE STOKES Copyrights"). In the chart set forth in Exhibit C, provides a comparison of the works being marketed and sold by the Defendants with a copy of the Copyright deposit for ANNE STOKES Copyrighted works. Exhibit C. When reviewing the comparison chart, it is clear that the Defendants' counterfeit works are nearly identical to Plaintiff's. As a result, the infringement is considered to be willful under 17 U.S.C. § 504(c)(2) and Plaintiff requests the statutory damages in the amount of fifty-thousand dollars ($50,000) to compensate Plaintiff and serve as a deterrent to Defendants. 17 U.S.C. § 504(c)(2).

Although 17 U.S.C. § 504(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 17 U.S.C. § 504(c)(1). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). In *Sara Lee*, 36 F. Supp. 2d at 170, In *Sara Lee*, the court awarded statutory damages in the amount of $750,000 after estimating the defendants' ill-gotten gains and trebling them to "deter and punish a willful continuous course of infringements and defiance of the judicial process." *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). The *Sara Lee* analysis included seven factors: (1) the profits made by the defendants; (2)

9

the revenues lost by plaintiff; (3) the value of the mark; (4) the deterrent effect on others; (5) whether the conduct was innocent or willful; (6) whether a defendant has cooperated in providing records; and (7) the deterrent effect on the defendant.

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *16.

Further, because damages inquiries under Section 1117(c) consider both punitive and compensatory considerations, "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities." *Sara Lee*, 36 F. Supp. 2d at 165. Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626, *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – "a counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *17.

The USPTO's Office of Policy and International Affairs and the National Telecommunications and Information Administration ("NTIA") together working as part of the Department of Commerce's Internet Policy Task Force conducted a review of the relationship between the availability and protection of online copyrighted works and innovation in the Internet economy. The Internet Policy Task Force's White Paper on Remixes, First Sale, and Statutory Damages (White Paper) was published on January 28, 2016 (See Exhibit D), which recognizes in copyright law that reduced damages may be warranted to avoid impeding new creative works, e.g., remixes -- works created through changing and combining existing works to produce something new and creative -- as part of a trend of user generated content. However, regarding straight-out counterfeiting where impeding creativity is not a concern, The Office of the U. S. Trade Representative issued findings of the Special 301 Out-of-Cycle Review of Notorious Markets for 2015, December 2015 (See Exhibit E), highlighting disturbing trends in the marketing and distribution of counterfeit goods online, with escalating levels of counterfeit sales online including an increase in the services that support such operations. With an estimated 15% increase in online sales of counterfeit goods, the economic toll of counterfeiting on governments, businesses, and consumers is disturbing.

Accordingly, a significant consideration should be whether infringing sales were made over the Internet, the rationale being that sales over the Internet increase the amount of an award because use of the Internet made the infringement widely available.

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *See Petmed Express, Inc. v. medpets.com, Inc.,* 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary

11

hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

      B.      **The Value of the ANNE STOKES Copyrights Justify a High Statutory Damages Amount**

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the ANNE STOKES] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563 at *16. Plaintiff has expended substantial time, money and other resources promoting the ANNE STOKES brand products. *Id.* at ¶ 9. As a result, products bearing the ANNE STOKES Copyrights are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.* Therefore, Defendants' use of the ANNE STOKES Copyrights are willful because products sold under the ANNE STOKES Copyrights are widely recognized and associated exclusively with Plaintiff. As such, the ANNE STOKES Copyrights are well-known and valuable asset of Plaintiff.

The success of the ANNE STOKES brand has resulted in its significant counterfeiting. Maria Strid Decl. ¶ 10. As part of its anti-counterfeiting program, Plaintiff investigates suspicious websites and online marketplace listings and has identified numerous websites and marketplace listings on platforms such as AliExpress, Alipay and Printerval which were offering for sale, selling and importing counterfeit products in connection with counterfeit versions of the ANNE STOKES federally registered ANNE STOKES Copyrights to consumers in this judicial district and throughout the U.S. *Id*. Thus, Plaintiff's request for a high statutory damages award should be given favorable consideration in view of the value of the ANNE STOKES Copyrights and the extensive steps being taken to protect, promote and enhance it. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *11.

### C. The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8.

Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Plaintiff respectfully requests the Court's entry of an award in the amount of fifty thousand dollars ($50,000) against Defendant. Plaintiff's request for damages is reasonable in light of prior awards against Internet-based counterfeiters. *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks).

### D. Defendants' Counterfeiting Was Willful

As alleged in Plaintiff's Complaint, Defaulting Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Plaintiff's products. [Dkt. No. 1 at ¶ 13].

Pursuant to 17 U.S.C. § 504(c)(3)(A), a counterfeiting violation is presumed willful "for purposes of determining relief if the violator ... knowingly provided ... materially false contact information to a domain name registrar...." 17 U.S.C. § 504(c)(3)(A). Many of the Defaulting Defendants Internet Stores look sophisticated and often include images and design elements that

13

make it very difficult for consumers to distinguish the counterfeit sites from the authorized website. [Dkt. No. 1 at ¶ 13]. Thus, willfulness is presumed in the instant case under 17 U.S.C. § 504(c)(3)(A).

Even without the statutory presumption, it is clear that Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiff's rights in the ANNE STOKES Copyrights, as can be determined in the comparison chart. *See* Exhibit C. After all, the Defendants were taking great pains to conceal their identities to try to avoid being held accountable for their activities. [Dkt. No. 1 at ¶¶ 4, 16].

Finally, District Courts have deemed infringement willful when defendants default. *See Estee Lauder Cosmetics Ltd. & Make-up Art Cosmetics Inc. v. Ali-Beauties Store Store, et al.,* No. 1:19-cv-04579 (N.D. Ill. Sept. 12, 2019) (unpublished) [Dkt. No. 49].

E.     A High Statutory Damages Award Is Appropriate and Just

Courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast

customer base through internet advertising"). Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In similar cases involving willful Internet-based counterfeiting, Courts in this district have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Burberry Limited, et al. v. The Partnerships And Unincorporated Associations Identified On Schedule "A",* No. 1:14-cv-04824 (N.D. Ill. Sep. 25, 2014) (unpublished) [Dkt. No. 38] (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 17 U.S.C. § 504(c), Plaintiff respectfully requests the Court's entry of an award of fifty thousand dollars ($50,000) per Defaulting Defendant.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005).

15

Finally, in determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Plaintiff] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16. Thus, Plaintiff's request for statutory damages award should be given favorable consideration in light of Plaintiff's effort to protect, promote and enhance the ANNE STOKES brand.

### F. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's rights in the ANNE STOKES Copyrights, including at least all injunctive relief previously awarded by this Court to Plaintiff in the TRO. Plaintiff is also entitled to injunctive relief so it can quickly take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling Counterfeit Plaintiff's Products. *See Estee Lauder Cosmetics Ltd. & Make-up Art Cosmetics Inc. v. Ali-Beauties Store Store, et al.,* No. 1:19-cv-04579 (N.D. Ill. Sept. 12, 2019) (unpublished) [Dkt. No. 49].

Given the ease with which Defendants can open new online stores, Plaintiff's injunctive relief is imperative to prevent Defendants from skirting the injunctive relief imposed by this Court by opening new online stores to sell previously banned merchandise. Many Defendants have multiple online stores that share the same email address and payment information in order to circumvent this district's directives. Plaintiff requests this Court also direct the e-commerce platforms of AliExpress, Alipay and Printerval to ban such actions and restrict the accounts associated with Defendants' accounts and for any other relief this Court deems just.

### V. CONCLUSION

Plaintiff respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of fifty thousand dollars ($50,000) per Defaulting Defendant pursuant to 17 U.S.C. § 504(c) and enter a permanent injunction order prohibiting Defaulting Defendants from selling Infringing Products and transferring all assets in Defaulting Defendants' financial accounts operated by AliExpress, Alipay and Printerval to Plaintiff.

Respectfully submitted,

Dated: October 16, 2024

By: s/Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Robert P. McMurray (Bar No. 6324332)
John Wilson (Bar No. 6341294)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com
Attorneys for Plaintiff
ART ASK AGENCY

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Memorandum was electronically filed with the Clerk of the Court, served by publication and email to the Defendants identified in Schedule A and served on all counsel of record and interested parties via the CM/ECF system on October 16, 2024.

*/s/ Michael A. Hierl*
Michael A. Hierl